UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| WILLIAM L. LAMMY and | : | Bankruptcy No. 05-19596DWS |
| CATHERINE R. LAMMY | : | |
| | : | |
| Debtors. | : | |

# MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the court is Debtors' Objection to Claim (the "Objection") of Wachovia Bank National Association as Trustee of the Security National Mortgage Loan Trust 2004-1 ("Wachovia") and Wachovia's Motion to Allow Claim ("Wachovia's Motion"). Both pleadings present the same issue, i.e., what is the amount necessary to cure the Debtor's default to Wachovia for the purposes of §1322(b)(5) (the "Arrearage Claim"). The parties do not dispute the relevant facts but rather disagree on whether a §1322(b)(5) cure requires payment of an arrearage under an original loan agreement or the loan agreement as modified pre-bankruptcy. For the reasons stated herein, I conclude that the Arrearage Claim is the agreed unpaid principal, interest and costs due under the loan modification. Accordingly, the Objection is sustained, and Wachovia's Motion is denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

Debtors entered into a residential loan agreement with Contimortgage Corporation on October 27, 1997, in the amount of $76,000 (the "Loan") as evidenced by a Note and Mortgage (the "Loan Documents"). Stipulation of Facts ¶¶ 1, 3.[1] Debtors defaulted under the Loan Documents by failing to make forty-six monthly payments (the "Loan Arrearage"). Stipulation of Facts ¶¶ 4, 6. Under the terms of the Loan Documents, the lender therefore had the right to seek acceleration and foreclosure. Exhibits 2-3 (unnumbered) to Proof of Claim.

Those remedies were not exercised. Instead, in June of 2004, Debtors were allowed to address the Loan Arrearage by entering into a Payment Extension Plan under the lender's New Beginnings Program (the "NBP"), which the parties agree resulted in a modification of the original Loan (the "Loan Modification"). Stipulation of Facts ¶ 6. The Loan Modification, found in Exhibit A to the Stipulation of Facts ("Exhibit A"),[2] contains the following material terms:

> 1. Debtors' previous failure to make payments is a default that entitles lender to enforce its remedies but it agrees not to exercise its remedies provided they continue to make timely monthly payments hereafter.

---

[1] True and correct copies of the Note and Mortgage are attached to Wachovia's proof of claim. Stipulation of Facts ¶ 2.

[2] The Loan Modification consists of two documents, though they are sequentially enumerated ("page 1 of 3", "2 of 3", and "3 of 3"). The first page is a letter addressed to Debtors and titled "Payment Extension Plan (New Beginnings Program). That page contains information specific to Debtors' loan. The next two pages, under the title "Details of the New Beginnings Program," contain the general terms of the NBP with no specific identification of Debtors' loan information. The Payment Extension Letter expressly incorporates the attached "Details of the New Beginnings Program." That and the sequential pagination makes clear that the documents are to be read as a whole, hereinafter referred to as the "Loan Modification." While neither is signed by the lender nor acknowledged by the Debtors, there is no contention that it does not represent a binding agreement notwithstanding its informality.

    2. As long as Debtors make timely payments, they will be allowed to make the same payments as under the original payment schedule and lender will consider the loan current.

    3. Lender will not demand payment of the Loan Arrearage during the term of the Loan or at the original maturity date, but instead makes a one-time modification of the Loan by extending the maturity date by additional months to reamortize the current principal balance (without adding any accrued and unpaid delinquent interest).

    4. If Debtors cease payments, lender can exercise its rights under the Loan Documents, i.e acceleration and foreclosure.

    5. The letter shall not be construed as a waiver of any rights under the Loan Documents with respect to the previous default and arrearage.

Exhibit A at 2-3.

Debtors subsequently defaulted by failing to make payments for November 2004 through July 2005 (the "NBP Arrearage"). Stipulation of Facts ¶ 7. Debtors filed this bankruptcy case on July 14, 2005.

Wachovia, the most recent assignee of the Loan,[3] has filed a proof of claim alleging a prepetition arrearage of $ 81,264.16 (the "Arrearage Claim").[4] The parties agree that the proof of claim accurately summarizes <u>both</u> the Loan Arrearage and the NBP Arrearage (the "Total Arrearage"). That it does so, Wachovia claiming both must be paid under the Chapter 13 plan, however, is where the dispute centers. Debtors contend that the Arrearage Claim should only include the NBP Arrearage of $14,209.75[5] whereas Wachovia takes the position

---

[3] The documents attached to the proof of claim indicate the Loan was assigned several times, most recently to Wachovia on February 18, 2005, i.e. after Debtors' entry into the NBP. However, Wachovia makes no argument that it is not bound by the terms of the NBP.

[4] As Debtor proposes a cure plan, the total claim is not at issue in these contested matters.

[5] This amount represents the following stipulated amounts: (1) $ 7,829.28 for nine

(continued...)

-3-

that Debtors must pay the Total Arrearage over the life of their Chapter 13 plan. After a hearing on this matter and the parties having submitted supplemental memoranda, this dispute is ripe for resolution.

**DISCUSSION**

<u>A.</u>

As this dispute involves Debtors' objection to a proof of claim, I begin with Federal Bankruptcy Rule of Procedure 3001(f), which provides that a proof of claim executed and filed in accordance with the rules of procedure constitutes *prima facie* evidence of the validity and amount of the claim. <u>Amatex Corporation v. Aetna Casualty & Surety Co.</u>, 107 B.R. 856, 870 (E.D. Pa.1989); <u>In re Wall to Wall Sound & Video, Inc.</u>, 151 B.R. 700, 701 (Bankr. E.D. Pa.1993). Even if there is an objection filed to the claim, the evidentiary effect of Rule 3001(f) remains in force. <u>In re Wells</u>, 51 B.R. 563, 566 (D. Colo.1985). The objecting party carries the burden of going forward with evidence in support of its objection which must be of probative force equal to that of the allegations of the creditor's proof of claim. <u>Id.</u> "The objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claims legal sufficiency." <u>In re Allegheny International, Inc.</u>, 954 F.2d 167, 173 (3d Cir.1992). If the objecting party succeeds in overcoming the prima facie effect of the proof of claim, the ultimate burden of persuasion

---

[5](...continued)
missed payments following the Loan Modification; (2) $ 1,348 in late charges; (3) $ 3,039.72 for sewer charges paid on Debtors' behalf; and (4) $ 1,992.75 for legal fees and costs. Stipulation of Facts ¶¶ 10-12.

then rests on the Claimant. <u>Allegheny International</u>, 954 F.2d at 174; <u>Wall to Wall Sound</u>, 151 B.R. at 701.

Wachovia's submission of the Loan Documents and assignment and itemization of the principal, interest and costs not paid under the Loan Documents meets the requirements of Rule 3001(f). <u>In re McKnight</u>, 2005 WL 1313519, at *2 (Bankr. E.D. Pa. May 31, 2005). There is no dispute that Wachovia has established the amount of missed payments and costs incurred by the lender over the life of the Loan. As such, Debtors bear the burden of overcoming the *prima facie* effect of the Claim. Keeping in mind that it is the Arrearage Claim that is at issue not the total secured claim, Debtors seek to do by proffering the Loan Modification that the parties agree modified their loan obligation. Stipulation ¶6. Under this Loan Modification, the collection of the Loan Arrearage was suspended and the maturity date of the Loan was extended to allow them to be paid through a reamortization of the remaining principal and interest. Debtors contend that as of the date of bankruptcy, the Loan Arrearage was not due under the Loan Modification and therefore the only payment default to cure is the payments missed under the Loan Modification, which they plan to do pursuant to §1322(b)(5).

B.

Section 1322(b)(5) states that:

(b) . . . the [Chapter 13] plan may:

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. § 1322(b)(5). The concept of curing a default was addressed years ago by the Second Circuit Court of Appeals in <u>Pierro v. Taddeo</u> (In re Taddeo), 685 F.2d 24 (2d Cir. 1982):

> When Congress empowered Chapter 13 debtors to "cure defaults," we think Congress intended to allow mortgagors to "de-accelerate" their mortgage and reinstate its original payment schedule. We so hold for two reasons. First, we think that the power to cure must comprehend the power to "de-accelerate." This follows from the concept of "curing a default." A default is an event in the debtor-creditor relationship which triggers certain consequences-here, acceleration. Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of "cure" used throughout the Bankruptcy Code.

<u>Id</u>. at 26-27. See also <u>Sapos v. Provident Inst. of Sav. in Town of Boston</u>, 967 F.2d 918, 926 (3d Cir. 1992) ("the plain meaning of "cure," as used in § 1322(b)(2) and (5), is to remedy or rectify the default and restore matters to the *status quo ante*").

At issue in this case is the parties' respective views of the default to be cured to reinstate pre-default conditions. When a debtor seeks to cure a prepetition payment default over the life of a Chapter 13 plan pursuant to § 1322(b)(5), "the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1322(e). "Cure by its very nature assumes a regime where debtors reinstate defaulted debt contracts in accordance with the conditions of their contracts." <u>Appeal of Capps</u>, 836 F.2d 773, 777 (3d Cir. 1987).[6] In adding §1322(e)'s directive that the parties' contracts determine the amount of arrearage, the intent of Congress

---

[6] This holding of <u>Capp</u> was abrogated by the United States Supreme Court in <u>Rake v. Wade</u>, 508 U.S. 464, 113 S.Ct. 2187 (1993), which allowed federal law to determine interest included in the cure amount under a mortgage loan. Congress responded in 1994 by adding § 1322(e) which codified the reasoning of the Third Circuit, namely that the underlying contract and state law should determine the amount of the arrearage.

-6-

was "that a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred." 140 Cong. Rec. H10752-01, H10770 (Oct. 4, 1994) (section-by-section analysis by Congressman Brooks).

The controlling contract in this case is the Loan Documents as modified by the Loan Modification. Under Pennsylvania law, "[a] modification does not displace a prior valid contract; rather, the new contract acts as a substitute for the original contract, but only to the extent that it alters it." Melat v. Melat, 602 A.2d 380, 385 (Pa. Super.,1992).[7] The parties specifically agree that the terms of the original Note and Mortgage are modified to move forty-six delinquent payments to the end of the Note and the payment period was extended by forty-six months. Stipulation of Facts ¶ 6. However, as Wachovia notes, the Loan Modification expressly retains all the lender's rights under the Loan Documents, ie. acceleration of the entire Loan and foreclosure. Moreover it states that "the terms of this letter shall not be construed as a waiver of our rights under the Note and other Loan Documents with respect to your previous defaults and the Arrearages." Exhibit A at 3. A fair reading of the terms of the Loan Modification is that the original payment default has not been waived. Rather so long as Debtors remain current on future payments, the Loan is considered current and the lender will forebear from exercising its contractual remedies and will permit the payments to be made through a reamortization of the outstanding principal portion of the Loan Arrearage over an extended maturity date.

---

[7] The Mortgage has a choice of law provision incorporating the law of the state where the subject property is located, here Pennsylvania. The NBP does not change that choice. I therefore turn to the NBP, Mortgage, and Note as construed under Pennsylvania law.

-7-

Debtors' corresponding obligation under the Loan Modification was to make current monthly payments, an obligation which they did not fulfill. Wachovia argues that its preservation of the original default requires Debtors to cure by paying both the new missed payments and the payments missed before the modification was permitted. I do not read the Loan Modification to so provide. A preservation of the original default allows the lender to exercise its contractual remedies of acceleration and foreclosure upon default of the Loan Modification. However, a new payment default under the Loan Modification provides Wachovia with the same remedies without regard to the original default. There does not appear to be a purpose of preserving the original default since those remedies are available by reason of the new default. As the contractual document offers no clue to what was intended by the preservation of the original default and makes absolutely no mention of a cure of either default, I cannot agree with Wachovia that the preservation of the default suggests the parties' intentions regarding a cure, especially one available in a Chapter 13 case where cure would be available.

The cases to consider the legal question posed by these facts are surprisingly few. In re Russo, case no. 01-24624 (Bankr. W.D.N.Y. June 21, 2002), an unpublished decision proffered by Wachovia,[8] involved an objection to a lender's arrearage claim that was calculated under the original note and mortgage and not the forbearance agreement in default. The facts bear a striking similarity to the circumstances here. The debtors defaulted under the original note and mortgage which resulted in a foreclosure judgment. Rather than

---

[8] Both parties had been asked to brief this legal issue but provided only broad statements and authority that did not shed real light on the subject. After a directive to supplement its submission with more thoughtful analysis and relevant case law, Wachovia submitted the unpublished Russo case as the only case it could find on point.

take the property to sale, the mortgagee entered into a forbearance agreement with the debtors which required repayment of the arrearage and the escrow advance over time and the maintenance of current payments.  Upon default the foreclosure judgment would be enforced and a sale would follow. The debtors filed a petition under Chapter 13 and proposed a plan that would cure the arrearage under the forbearance agreement.  The court determined that the once the mortgage was deaccelerated pursuant to §1322(b)(5),[9] the debtors were required to make post-petition payments to the lender equal to the amounts due under the forbearance agreement, not the original mortgage and note.  The court was persuaded that the payments obligations evidenced by the note and mortgage had been modified and restructured by the forbearance agreement which stated that the payment modifications were an exception to its preservation of the terms of the note and mortgage.[10]  Slip op. at 7.  The court noted that the forbearance agreement contained no language that upon default the payments would be those required under the note and mortgage and appeared not to find the ripening of the right to foreclose upon default to evidence the lender's intentions about payment. [11]  Id.

---

[9] Upon default of the forbearance agreement, a judgment was secured and a foreclosure sale was pending when bankruptcy was filed.

[10] In that connection, it noted that the forbearance agreement provided as here for the payment of all of the amounts due under the note and mortgage after a default was declared; it did not simply provide for a cure of the arrearage over a short time and a return to the terms of the original note.  Slip op. at 6.

[11] This conclusion may have been influenced by the fact that the lender's attorneys had advised the Debtors after default but pre-bankruptcy that the loan could be reinstated by paying the amounts due under the forbearance agreement rather than what would have been due under the original note. Id. at 7-8.

Wachovia argues that <u>Russo</u> is not persuasive because its outcome (which favors the Debtors' position) was driven by the facts of that case and not any case law or reference to the Bankruptcy Code.[12]  As I have already concluded that it is the parties' agreement that determines the outcome of this contested matter, I agree that a different result may obtain under different facts.  However, Wachovia does not enlighten me as to why the provisions of the Loan Modification compel a different result here. It appears that some of the <u>Russo</u> factors are present here while others are not.  Significantly, the Loan Modification altered the payment terms of the original note and mortgage and provided for full payment of the note after a default was acknowledged.  A new amortization schedule was implemented, not a short term cure that would reinstate the original payment terms.  Like the agreement in <u>Russo</u>, the Loan Modification requires Debtors to make current payments to have the benefit of the new terms.  Moreover like the <u>Russo</u> court, I am unable to conclude that a cure

---

[12] However, <u>Russo</u> does belie the contention advanced by Wachovia that the amendment of the Bankruptcy Code to overrule the Third Circuit's holding in <u>In re Roach</u>, 824 F.2d 1370 (3d Cir. 1987) to allow a cure until the residence is sold at sheriff's sale under applicable state law suggests that Congress only contemplated cures of <u>all</u> amounts in default under the note and not amounts in default under a modification or forbearance agreement. Aside from the fact that the cases to consider the issue have concluded under the facts of those cases that a cure could be accomplished by paying solely the arrearage under the modified agreement, the statute appears to support that result. The plain language of §1322 (b)(5) states that a plan may provide for the curing of <u>any</u> default on a long-term debt contract.  <u>See</u> Lawrence P. King, et al.,  3 Collier on Bankruptcy ¶ 1322.09[2] at 1322-35 to 1322-36 (15th ed. 2005) (right to cure applies to all long-term debt contracts, including defaults on secured contracts such as land sale installment agreements as well as mortgages and unsecured debts such as student loans and installment tax payment arrangements); Keith M. Lundin, 2 Chapter 13 Bankruptcy § 115.1 at 115-7 (3d ed. 2000 & Supp. 2004) (Section 1322(b)(5) applies to any long term debt).  This literal construction of "any default" supports those cases that have found that a debtor may propose a modified plan to cure post-petition as well as prepetition arrears. <u>Green Tree Acceptance, Inc. v. Hoggle (in re Hoggle)</u>, 12 F.3d 1008 (4th Cir. 1994). Accordingly, I hold as a matter of bankruptcy law that a debtor may cure the arrearage under a loan modification without curing the arrearage under the original note and still invoke the protection of §1322(b)(5) so long as the loan modification agreement does not foreclose such cure.

requires payments under the Loan Documents absent an express statement to that effect in the Loan Modification. As noted above, while the original default was preserved as to acceleration and foreclosure, the document is silent on what Wachovia's intentions were short of those ultimate remedies should Debtors fail to make current payments.

In a reported case my research uncovered, <u>In re Gellerman</u>, 263 B.R. 691 (Bankr. D. R.I. 2001), the preservation of payment defaults did not preclude cure limited to the post-modification default only. The Gellermans had an outstanding arrearage after completing a series of forbearance agreements with their mortgagee. That amount was segregated into a "corporate advance" or "arrearage" bucket when the loan was securitized. No efforts were made to collect the arrearage by either the original lender or assignee. When the borrowers defaulted again and entered another forbearance agreement, this time with the assignee, both parties acknowledged that the loan delinquency was shifted to an arrearage bucket and that the Gellermans had a continuing obligation (albeit without specifying when or how) to satisfy it which would not be cured by the completing the forbearance agreement. <u>Id.</u> at 692-93. When the Gellermans yet again defaulted and subsequently filed their bankruptcy petition, the issue there, like here, was whether the arrearage to be cured under §1322(b)(5) was the amount solely due under the forbearance agreement or whether that amount should also include the arrearage bucket.

The <u>Gellerman</u> court reasoned that the separation of the pre-securitization arrearage and forbearance from its collection as well as the subsequent forbearance agreement that preserved the assignee's claim for the "arrearage bucket" but did not require its payment to cure the default demonstrated the parties' intent to place the securitized arrearage at the end

of the note. Id. at 694. As such the court found for the purposes of §1325(b)(5) that the arrearage to be cured did not include the securitized arrearage and that allowing it to be included in the arrearage claim would give the lender a windfall and deprive the debtors of the benefit of their earlier bargain.

Unlike the Gellerman court, I need not infer the parties' intent because the terms of the Loan Modification are unambigous: the Loan Arrearage is to be paid out at the conclusion of the original loan term over a reamortized schedule extending the maturity date provided the Debtors continue to make timely monthly payments under the Loan. Like the treatment of the arrearage bucket in Gellerman, Wachovia agreed to this deferral of receipt of the Loan Arrearage and a forbearance of the original default so long as current monthly payments were made. While current payments were not maintained, Debtor's cure of the NBP Arrearage would return Debtors to their pre-default status under the Loan as modified by the Loan Modification and would nullify the consequence of their post-NBP default. Cure of the NBP Arrearage pursuant to §1325(b)(5) restores the *status quo ante*. Allowing Wachovia to add the Loan Arrearage to the cure amount under the Plan gives it more than its predecessor contractually agreed to receive. Moreover it would foreclose for these Debtors one of the most powerful remedies available to debtors reorganizing under Chapter 13, the ability to cure any pre-bankruptcy default notwithstanding the prohibition on modifying a loan secured solely by residential real estate. 11 U.S.C. §1322(b)(2).

This result is consistent with other cases that have considered the parameters of a cure under §1325(b)(5) where a prior default precedes the triggering default. In Litton v. Wachovia Bank (In re Litton), 330 F.3d 636 (4th Cir. 2003), the court considered the debtors'

attempt to cure a default of a March 3, 2000 order (the "2000 Order") memorializing a settlement agreement entered in their 1997 Chapter 13 case. Prior to that settlement, debtors had unsuccessfully settled their financial difficulties with this lender in a prior 1992 bankruptcy case. Under the 2000 Order, the debtors were required to make an initial payment of $55,000 by June 30, 2000, as a condition of securing refinancing of the balance of their loan with Wachovia. They failed to do so, and Wachovia moved to foreclose. A new and third Chapter 13 case followed on November 21 in which the debtors proposed to cure the arrearages by making the $55,000 payment in 30 days and regular payments as provided in the 2000 Order. Wachovia objected to confirmation of the plan. While the issue was whether the plan was an impermissible modification expressly foreclosed by the 2000 Order, the Court's opinion is instructive on the use of the cure provision of §1322(b)(5).

> The 2000 Petition was filed on November 21, 2000, when the Littons' only default, under the terms of the 2000 Order, was their failure to make the Initial Payment. By providing for terms of payment virtually identical to those required by the 2000 Order, the Plan simply sought to return the 2000 Order to its pre-default condition. [citation omitted]. It proposed that Mrs. Litton pay all arrearages and maintain all payments during the life of the Plan. . . . Under these circumstances, the Plan does not propose a "modification" of the 2000 Order. Rather, evaluated by its express terms, under the foregoing authorities, and by its proposed treatment of the 2000 Order, the Plan constitutes a "cure" under the Bankruptcy Code, in that it seeks to restore the "status quo ante." [citation omitted]

Id. at 644-45. The debtors were permitted to address their payment default of the 2000 Order without regard to the default that had existed before the settlement embodied in that Order was reached.

A further illustration is provided in In re Simmons, 2004 WL 2249498 (Bankr. N.C. Oct. 5, 2004), where the debtor was obligated to his lender on two separate notes: only the

-13-

first had payment terms and payment of the second was suspended so long as debtor was not in default of the payment obligations under the first note. As of the petition date of his Chapter 13 case, he was in default under the payment terms of the first note which accelerated payment of the second note. The Plan proposed to cure the first note and make no payments under the second note. The lender insisted on full payment of the second note because of the default under the first note. The Debtor's position was that no payment would be required under the second note. The court concluded that by proposing to pay the first note, the parties would be returned to their respective pre-default conditions. The Plan merely reinstated that position.

As these decisions make clear, the essential inquiry is whether the proposed cure will remove the triggering event that caused the default. In this case, the failure to pay the NBP Arrearage was the triggering event; cure of it will return the parties to the *status quo ante* and permit the Debtors to have the benefit of the loan extension. Accepting Debtors' legal position, I conclude that they have met their burden of refuting the *prima facie* effect of the Claim. They have demonstrated that their prepetition arrearage under the Loan, as modified by the Loan Modification, is the stipulated NBP Arrearage of $14,209.75. Payment of that amount through the Plan will reinstate the modified Loan, including its term that calls for payment of the Loan Arrearage on the Extended Maturity Date.

An Order consistent with this Memorandum Opinion shall follow.

*Diane W. Sigmund*
_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

Dated: October 11, 2006

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| WILLIAM L. LAMMY and | : | Bankruptcy No. 05-19596DWS |
| CATHERINE R. LAMMY | : | |
| | : | |
| Debtors. | : | |

# ORDER

**AND NOW**, this 11th day of October 2006, upon consideration of Debtors' Objection to Claim (the Objection) of Wachovia Bank National Association as Trustee of the Security National Mortgage Loan Trust 2004-1 (Wachovia) and Wachovia's Motion to Allow Claim (Wachovia's Motion), and for the reasons stated in the attached Memorandum Opinion;

It is hereby **ORDERED** that the Objection is **SUSTAINED** and Wachovia's Motion is **DENIED**. Wachovia's claim for pre-petition arrears is allowed in the amount of $14,209.75.

*/s/ Diane W. Sigmund*

DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge